W. J. WALLACE v. THE WESTERN NORTH CAROLINA RAIL-
ROAD COMPANY.

*Evidence—Trial—Judge's Charge—Negligence.*

1. When the Court in its instructions to the jury read to them the opin-
ion of the Supreme Court delivered upon an appeal from a former
trial, wherein certain material facts were recited, of which no
proof was offered on the second trial, without calling the atten-
of the jury to that point, and exception thereto was made in apt
time: *Held*, to be sufficient cause for a new trial.

2. That the testimony offered on the trial furnished evidence to go to
the jury that there was negligence on the part of the defendant;
that the injuries were not the result of a mere accident, and that
they were not produced by the contributing negligence of the
plaintiff.

This was a CIVIL ACTION by plaintiff to recover damages
for personal injuries, suffered by defendant's alleged negli-
gence, tried before his Honor *Clark, J.,* at October Term of
McDOWELL Superior Court for the year 1888.

By consent, the following issues were submitted to the
jury:

1. Was the plaintiff injured by the negligence of the
defendant, as alleged in the complaint?

2. Did the plaintiff contribute to his injury by his negli-
gence?

3. What damage, if any has the plaintiff sustained?

The jury responded to the first issue, "Yes;" to the second,
"No;" and to the third issue, "Three thousand dollars ($3,000)."

1. The plaintiff, testifying in his own behalf, said he got
on the train at Old Fort to go to Marion on defendant's
railroad in November, 1885, and that soon after leaving Old
Fort the conductor came in the car and took up the tickets;
that within about two miles of Marion the train stalled, and
tried two or three times to move, and eased back and stopped,
and the train being stopped he got up from his seat to pick

up an overcoat and bottle of liniment for a friend, when car was suddenly struck, as if by a cannon ball, when he was thrown forward and fell and had his thigh broken.

On cross-examination, he testified that the train was a freight train, and that the car he was sitting in was one attached to end of train, and had a partition in it with seats along each side; there were seven persons in the car, passengers, and that there were plenty of seats in the car for all; that there was some jerking and moving backward and forward; train had stopped a little while, and some one in car said train was about to stall; that at time of shock, had overcoat in one hand and bottle in the other, and was standing up handing them to a Mr. Clinard, when the train smashed back, and he was thrown forward and Clinard was thrown on his feet; that he had ridden on freight trains before often; that in going up hill, there was no slack; that the train did not move after he was hurt; train had finally stopped when he got up; that nobody in car was hurt but him, nor was any thrown down but him and Clinard, and that Clinard was a crippled man, having his arm in a sling; it was raining that morning and was a damp, wet day.

The deposition of Frank Clinard, a witness for the plaintiff, was then offered and read, the material parts of which are as follows:

Q. Were you present when the plaintiff received the injury complained of in this case?

A. I was.

*　　　*　　　*　　　*　　　*　　　*　　　*

About two miles from Marion the train stalled, and when it stalled it gave a sudden jerk, and my overcoat was hanging on a hook attached to the side of the car, and when the sudden jerk came it threw my overcoat off the hook, and in my overcoat pocket was a bottle of liniment, a liquid; when the overcoat fell the bottle of liniment fell out of my pocket on the floor of the car; the car was then perfectly still; I

had my right arm in a sling; Mr. Wallace, the plaintiff, and I got up off the bench at the same time to pick up my over-coat; at the same time Dr. Cheek and two other passengers got up and walked to the rear end of the car.

After Mr. Wallace and myself had got up to get the over-coat the engine came back against the cars and threw Mr. Wallace down, and threw me down also; I fell on my crip-pled arm across Mr. Wallace's left leg, between the knee and ankle; some gentleman in the car picked me up; when I got up I found that Mr. Wallace was badly hurt, and I was hurt also.

The engine came back with very great 'force, sufficient to throw one down in a car.   The force was backward, and Wallace and myself were thrown forward.

Q. Was there any signal given before this shock oc-curred?

A. I did not hear any.

Q. Up to the time the jerk occurred, which threw the coat down, where had the plaintiff been and what was he doing?

A. He was sitting on the seat beside me.

Q. Did he leave his seat at any time from the time he left Old Fort till the car became stationary on the track?

A. Not that I remember.

Q. How long did the car remain stationary before the shock came which threw you and the plaintiff down?

A. From the best of my knowledge and belief, from one-half of a minute to a minute.

Q. At the time the train was forced back by the engine, was there, or was there not, any circumstance to indicate immediate danger to a person if they got up?

A. There was not.

The defendant introduced no evidence, but requested the Court to give the following instructions to the jury:

1. That upon the facts, as they appeared from the evidence of plaintiff, and which are admitted, the plaintiff was negligent and contributed to his injury by the same, and the jury be so directed to find, and that the Court so declare.

2. That a passenger on a freight train accepts it, and takes it, and travels on it, acquiescing in the usual incidents and conduct of a freight train, if managed by prudent, competent men.

3. That in the movement of a freight train the jerking is inevitable, and is not ascribable to negligence or want of skill, or improper management on the part of agents of the company.

4. That it is not to be expected a company will provide the freight trains with all the conveniences and safeguards against danger that are required in the operation of passenger trains.

5. It is the duty of a passenger in the train to take ordinary care of himself. If danger is apparent or expected he is to see and know it.

6. It is usual and proper for a passenger to remain in his seat, and especially so on freight trains, when he has reason to believe there is danger in any other position than being seated.

7. That there was no evidence that the engine or locomotive was overloaded.

8. That there is no evidence of careless management of the locomotive or cars on the part of the agents or servants of the defendant on this occasion.

9. That in the light of the evidence in this action, the injury suffered by the plaintiff was an accident, and not the result of negligence.

After filing of the instructions and prayer for instructions with the Court, the defendant moved the Court to hold, that the plaintiff could not recover in this action, as a matter of

law, inasmuch. as his own evidence, admitted to be true, showed him to be guilty of contributory negligence.

This motion was denied by the Court, and defendant excepted to the ruling of his Honor.

One ground of negligence assigned was that the locomotive was overloaded, and as a consequence it stopped on a steep grade on the road, and in pushing the train back to a point from which it could the more readily start anew it produced heavy jolts and jars, and while the plaintiff was standing on the floor of the car in which he was riding there came such jolt so violent as to cause him to fall on the floor and break his thigh, &c.

The case was before this Court by a former appeal— *Wallace* v. *The Railroad Company*, 98 N. C., 494. On the former trial, as tending to show· that the locomotive was overloaded, the plaintiff produced evidence that " the train was a long one." On the last trial there was no evidence as to the length of the train, but on this trial the Court, in its instructions to the jury as to the law applicable, read to them a considerable part of the opinion of this Court delivered in the former appeal and particularly for the present purpose, that part wherein the Court said : " It is in evidence that the jolts and jars incident to the freight train were known to him ; *that on this occasion the train was a long one,* and the locomotive was moving it with difficulty," &c. The Court did not qualify the reading and caution the jury. by telling them there was no evidence on the last trial as to the length of the train. The defendants assign error that the Court so read the extracts recited at all, and particularly that it did so without explaining to the jury that there was no evidence on the trial then in progress as to ·the length of the train.

From the judgment rendered for the plaintiff the defendant appealed.

*Mr. John Devereux, Jr.,* for the plaintiff.
*Mr. Chas. Price,* for the defendant.

MERRIMON, J.   It is alleged in the complaint, among other things, that the defendant was negligent, in that "the locomotive of the said defendant upon its said railroad was overloaded, causing it to stall," &c.

Such negligence made one of the leading elements and constitutes part of the plaintiff's alleged cause of action, and it was material to prove on the trial that the locomotive driving the train on which the plaintiff was riding when he sustained the injury complained of was overloaded.   The evidence to prove this fact was not very clear, strong and satisfactory, and evidence that the train *was a long one* would tend directly and materially to prove it, and in case of doubt might—would, no doubt—lead the jury to conclude that it was as alleged.   There was no evidence produced on the last trial as to the length of the train ; on the first one, it appeared that it was a long one, and when the Court read from the opinion of this Court, in the former appeal, that there was such evidence, without a word of caution or explanation, the jury might reasonably have understood the Court to instruct them that there was such evidence for them to consider.   Certainly the tendency of what was read to them as to the evidence in this very case was to mislead them, and we can see that that evidence, in connection with the other evidence as to whether or not the train was overloaded, may have been treated by the jury as controlling.   If the train was not overloaded, and they so found the fact to be, they might have rendered a verdict in favor of the defendant.   We do not mean to suggest that they ought or ought not to have done so in that case.

The Court should, in connection with its reading from the opinion of this Court, have cautioned the jury that they could not consider the evidence of the former trial, and that particularly there was no evidence on the last trial as to the length of the train.   It was error to fail to do so, because the direct tendency was to mislead the jury—perhaps, materially.

If it be said that the defendant's counsel ought to have called the Court's attention to the misleading tendency of the extract from the opinion mentioned read to the jury, it must be said in reply, that such suggestion might have force if objection was not made in apt time before the jury rendered their verdict. It does not, however, appear that objection was not made in apt time; on the contrary, the case stated on appeal shows that the exception was taken before the verdict was rendered, so that the Court had opportunity to make any corrections it deemed proper.

Inasmuch as there must be a new trial, we deem it proper to add, in respect to other assignments of error, that we are of opinion that there was evidence to go to the jury tending to prove that the locomotive was overloaded, and of careless management of it; that the Court could not properly instruct the jury, in the light of all the evidence, that the injury sustained by the plaintiff was the result of a mere accident; nor should it have said to them that, in view of all the evidence, the plaintiff could not recover; nor that, accepting the plaintiff's own evidence as true, he was chargeable with contributory negligence. What we said in the former appeal in respect to contributory negligence was appropriate to be said in the last trial in view of the evidence.

The defendant is entitled to a new trial.

Error.