GORDON v. SEABOARD AIR LINE RAILWAY CO.

(Filed May 5, 1903.)

1. EVIDENCE—*Conflicting Evidence—Verdict—Questions for Jury.*

Where the evidence in a case is conflicting, the weight and credibility thereof is for the jury, and the verdict thereon is conclusive.

2. INSTRUCTIONS—*Negligence—Contributory Negligence.*

That certain parts of an instruction given on the issue of negligence pertains more properly to the issue of contributory negligence is not prejudicial to the defendant, if it operates, as in this case, more strongly against the plaintiff if given on the first issue than on the second.

MONTGOMERY, J., dissenting.

ACTION by J. F. Gordon against the Seaboard Air Line Railway Company, heard by Judge *W. S. O'B. Robinson* and a jury, at October Term, 1902, of the Superior Court of UNION County.

This is an action for the recovery of damages for personal injuries received by the plaintiff in attempting to alight from a moving train at the invitation of the conductor, as alleged by the plaintiff.

The following extracts from the complaint sufficiently present the essential facts involved in the case, to-wit:

"5.   That on the 8th day of February, A. D., 1901, the plaintiff, at Monroe, N. C., boarded one of the Carolina Central Railroad Company's freight trains as a passenger, which train usually carried passengers, to go to Indian Trail, N. C. and paid the conductor in charge of said train his fare to said Indian Trail, N. C.

"6.   That a short while after the plaintiff boarded the said train and paid his fare, as hereinbefore set forth, the conductor in charge of said train told the plaintiff that he had a heavy train, it was up grade and he did not want to stop at Indian Trail to let plaintiff off, but would carry him to Matthews, in the County of Mecklenburg, and would let him off there, and that his train would not go further than Charlotte, and would return by Matthews in about 45 minutes, and that the plaintiff could wait at Matthews until the conductor returned and he would bring the plaintiff back to Indian Trail, to which proposition the plaintiff assented for the accommodation of the defendant.

"7.   That the defendant's conductor told the plaintiff that he would slow up his train at Matthews to a safe speed for him to alight, and for him to get off the train when it reached a point opposite the express office when he (the conductor) motioned for him to get off; that upon arriving at Matthews the train did slow up, and the conductor went upon the steps of the rear end of the last car and motioned to the plaintiff to get off, which plaintiff obeyed, and, as he went to alight from the train, the defendant, through and by the negligence of its employees and servants, violently and quickly jerked its train forward, and by said negligence and carelessness of its employees and servants, the plaintiff was thrown violently upon and against the ground and received the great injury hereinafter set forth.

"8.   That by reason of the negligence and carelessness of the defendant, through and by its agents, employees and

GORDON v. RAILWAY CO.

servants as hereinbefore set forth, the plaintiff was suddenly and violently thrown against and upon the ground and was painfully and severely injured, to-wit, his collar bone was broken, and from which injury he suffered great mental and physical pain, and lost about three months time of his labor."

The answer denied these allegations and pleaded contributory negligence. There was testimony tending to sustain the contentions both of the plaintiff and the defendant. The issues and answers thereto were as follows:

"1.  Was the plaintiff injured by the negligence of the defendant as alleged in the complaint?  Yes.

"2.  Did the plaintiff contribute to his injury as alleged in the answer?  No.

"3.  What damage if any is the plaintiff entitled to recover?  $300."

From a judgment for the plaintiff the defendant appealed.

*Redwine & Stack,* for the plaintiff.
*Adams & Jerome* and *J. D. Shaw,* for the defendant.

DOUGLAS. J., (after stating the case):   The defendant made the usual motion for non-suit, which was properly refused.   There was testimony tending to support the contentions of the plaintiff, and while there was equally as strong or stronger testimony for the defense, we must abide by the verdict of the jury who alone can determine the weight and credibility of the evidence.

The defendant's first, second and third exceptions as to the admission of testimony cannot be sustained.   As they are not even alluded to in the defendant's brief, it would seem unnecessary to further discuss them.   Neither does the brief allude to the fourth and sixth exceptions, which are equally untenable; but as to the fourth exception is to a certain extent involved in the fifth, upon which the defendant seems to rely, we will discuss them together.

The fourth exception is to the following charge of his Honor: "If you shall find as a fact from the evidence and by the greater weight thereof that the plaintiff was a passenger, then you will consider the issue as whether he was injured by the negligence of the defendant, and if you shall find as a fact from the evidence and by the greater weight thereof that after the plaintiff had paid his fare to Indian Trail the train ran past his station, and the conductor promised to slow up at Matthews and let him off and that he would take him up on his return trip and let him off at his station, and that while passing Matthews, the train not moving faster than a fast walk, and the danger not being apparent to a reasonable man, and being told by the conductor, that is, if you shall find as a fact from the evidence and by the greater weight thereof that the conductor did motion to him or tell him to get off, and you further find as a fact from the evidence that the danger was not apparent to a reasonable man, you will respond yes to the first issue."

The fifth exception is directed to the following part of his Honor's charge: "In passing on the second issue as to contributory negligence, the burden is still on the plaintiff to satisfy you by the greater weight of the evidence that, at the time he got off the moving train, the danger was not apparent to a careful prudent man, and if he has so satisfied you, you will respond no to the second issue; if he has failed to so satisfy you, you will respond yes, and will not consider the issue as to damages."

The nature of the defendant's fifth exception, the only one alluded to in its brief, is thus stated: "The appellant's fifth exception should be sustained for failure of the court to instruct the jury, in passing on the second issue as to contributory negligence in addition to the charge as given on that issue, that it was necessary for them to find as a fact that the conductor promised to slow up at Matthews and let the plain-

GORDON *v.* RAILWAY CO.

tiff off, and that the conductor did motion to him or tell him to get off at Matthews."

This exception cannot be sustained.   It does not appear that the defendant asked for any additional instructions.   In any event, we think the instruction was sufficient in view of what was said in the preceding charge on the first issue. His Honor charged the jury in effect that before they could find the defendant guilty of negligence, they must find that the train was not moving faster than a fast walk, that the conductor motioned to, or told the plaintiff to get off and that the danger was not apparent to a reasonable man.   Having found the defendant guilty of negligence, under the above instructions they must have found these facts.   If these facts were already found by the jury before they came to the consideration of the second issue, such facts were evidently still in their minds.

It is contended that some parts of this instruction pertained more properly to the issue of contributory negligence, but, admitting this to be true, they operated more strongly against the plaintiff when given on the first issue than on the second, since the finding against him on the first issue would end his case.   The issue of contributory negligence is not an independent issue in the sense of complete isolation, and can never arise until after the first issue is found in favor of the plaintiff.   The first essential requisite for recovery is the negligence of the defendant, and until that is found, the negligence of the plaintiff is utterly immaterial.   The nature and relative connection of these issues is discussed in *Cox v. Railroad,* 123 N. C., 604; *Edwards v. Railroad,* 129 N. C., 78, and *Curtis v. Railroad,* 130 N. C., 437.

If the facts stated in the complaint were true, and they have been so found by the jury, we see no substantial difference between this case and that of *Davis v. Railway,* decided at this term.   See also *Whitley v. Railroad,* 122 N. C., 987;

*Hodges v. Railway,* 120 N. C., 555; *Cable v. Railway,* 122 N. C., 892; *Johnson v. Railroad,* 130 N. C., 488. In *Railroad v. Egeland,* 163 U. S., 93, where the plaintiff, a laborer in the employ of the defendant, was ordered by the conductor to jump off a train going about four miles an hour, and was injured in doing so, the court says: "If plaintiff reasonably thought he could with safety obey the order, by taking care and jumping carefully, and if because of the order he did jump, the jury ought to be at liberty to say whether under such circumstances he was or was not guilty of negligence."

The judgment is

Affirmed.

MONTGOMERY, J., dissenting. The plaintiff seeks to recover of defendant damages on account of personal injuries alleged to have been received by the plaintiff through the negligence of defendant. He alleged in his complaint that he boarded defendant's train at Monroe, as a passenger, intending to go to Indian Trail and paid the conductor in charge his fare; that afterwards it was agreed between him and the conductor, on account of the steep grade at Indian Trail, that the train would not be stopped at that place, but would be moved beyond to Matthews, and that the plaintiff could wait at Matthews until the train returned when and where the plaintiff would be taken up and carried back to Indian Trail; that the conductor told the plaintiff he would slow up at Matthews to a safe speed for him to alight from the train and that he should get off when it reached the point opposite the express office upon a signal from the conductor; that the train did slow up and signal given "and as he went to alight from the defendant's train the said defendant, through and by the negligence of its employees and servants, violently and quickly jerked its train forward, and by said negligence and carelessness of defendant's employees

and servants the plaintiff was thrown violently upon and against the ground and received great injury herein and afterwards set forth."

Upon the trial the plaintiff testified to matters supporting his complaint. Amongst other things he said, concerning his purpose to alight at Matthews, "then I saw him (conductor) on the step at the rear end of the car. He motioned to me and told me to get off. I started to step off and the train gave a sudden jerk, threw me to the ground and broke my collar bone. . . . I fell because the car gave a sudden jerk as I was on the step. The train was going about the speed of a fast walk." He said on cross-examination that he had come down to get off the train before he saw the conductor. The conductor testified that he did not see the plaintiff on the day of the alleged injury, that he was not a passenger on the train, nor did he collect from him any fare; he said the train was going from ten to fifteen miles an hour as it passed Matthews. And other witnesses for the defendant, living in Matthews, testified that the speed of the train through Matthews was ten or fifteen miles an hour.

His Honor in his instructions to the jury treated the case not as one where the plaintiff had been jerked violently from the defendant's train and had been injured by reason of the jerk or wrench, but he treated it as a case in which the plaintiff got off the moving train of his own volition. This will be seen from a reading of two paragraphs in the charge which were excepted to by the defendant, as follows: "If you shall find as a fact from the evidence and by the greater weight thereof that the plaintiff was a passenger, then you will consider the issue whether he was injured by the negligence of the defendant; and if you should find as a fact from the evidence or by the greater weight thereof that after the plaintiff had paid his fare to Indian Trail the train run

past his station, and the conductor promised to slow up at Matthews and let him off and that he would take him up on his return trip and let him off at his station, and that while passing Matthews the train was not moving faster than a fast walk, and the danger not being apparent to a reasonable man, and being told by the conductor, that is, if you should find as a fact from the evidence and by the greater weight thereof that the conductor did motion to him, or tell him to get off, and you further find as a fact from the evidence that the danger was not apparent to a reasonable man, you will respond 'Yes' to the first issue."

"In passing on the second issue as to contributory negligence, the burden is still on the plaintiff to satisfy you by the greater weight of the evidence that at the time he got off the moving train, the danger was not apparent to a careful, prudent man, and if he has so satisfied you, you will respond 'No' to the second issue. If he has failed to so satisfy you, you will respond 'Yes' and will not consider the issue as to damages."

Considering the case, then, from the standpoint of the court below, I think there was error in those parts of his charge to which the plaintiff excepted. It is true the jury believed the plaintiff as to the speed of the train in preference to the conductor and the disinterested witnesses of the defendant who lived in Matthews. The plaintiff said the train was going about the speed of a fast walk. The conductor and the other witnesses for the defendant said that its speed was ten or fifteen miles an hour. His Honor instructed the jury that if they should find that the train was not moving faster than a fast walk and the danger not being apparent to a reasonable man, and that if he was told by the conductor, that is, if they should find as a fact from the greater weight of the evidence that the conductor did tell him to get off, they should answer the first issue (as to the de-

fendant's negligence) "Yes." In that, we think there was error. The plaintiff's own testimony showed that he contributed to his own injury. His standing on the bottom step of the train attempting to alight under its speed, as testified to by himself, and being in a position of danger liable to be thrown off by a jerk or wrench of the cars, was in itself contributory negligence and the getting off under the circumstances was unreasonable.